UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| UNITED STATES OF AMERICA, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | NO. 2:19CR59-PPS |
| JARON JOHNSON, | ) |  |
| Defendant. | ) |  |

## OPINION AND ORDER

Jaron Johnson is named, along with his brother Jarod Johnson and mother Patricia Carrington, in a one-count indictment charging them with kidnaping victim T.G. "for information concerning a witness in a criminal case." Jaron[1] appeals the magistrate judge's determination that Jaron remain in custody pending trial in this case. The magistrate judge's detention order concluded that there exist no condition or combination of conditions that would reasonably assure the safety of the community or Jaron's continued appearance in court if Jaron were released. [DE 33 at 1.] I review the matter *de novo*, and held a hearing on October 1, 2019, at which Jaron appeared in person with his counsel. At the close of the hearing, I announced my decision that the relevant considerations made a clear case for detention and Johnson's motion would be denied, with a written order to follow. This opinion reduces my reasoning to writing.

---

[1] Intending no disrespect, I will refer to Jaron Johnson as "Jaron" rather than by his surname to avoid unnecessary confusion with his co-defendant Jarod Johnson.

At the hearing, the government proceeded by way of proffer as to the evidence supporting the charge, and clarified that its position in favor of pretrial detention is premised on Jaron being a danger to the community. According to the prosecution, the victim will testify to these facts. The victim had known all three defendants for some years and was capable of identifying them as her kidnapers. Late on the night in question, she was walking home in a somewhat remote area near a cemetery. A car pulled up, blocking her way, and she was confronted by Jaron, who struck her on the back of the head and forced into the car at gunpoint. She was blindfolded and duct-taped, and Jaron and Ms. Carrington questioned her about the whereabouts of her sister Amber, a victim-witness in a case set to be tried the next day against Jarod Johnson. The victim gave up no information about her sister's location.

At some point, the car stopped and Jarod Johnson entered the scene, after which the victim was further questioned about Amber, and was kicked and beaten. Eventually she was removed from the car and placed on wet ground, which she feared meant she was being taken to a body of water. Instead, she was taken to an abandoned house, where Carrington shot her in the face. The victim fell to the ground and played dead. Because Jarod Johnson questioned whether she was dead, four or five additional shots are fired, one grazing her arm. After the defendants left the scene, the victim got up and went in search of help. A doorbell camera on a neighboring house produced video footage of the victim, showing her pleading for help and saying "I've been shot." Once police arrived, the victim named the defendants, and officers were able to locate a crime scene using GPS records from Jarod's ankle monitor. There they found duct tape, blood, and discharged

2

casings.  Later in the investigation, the victim was shown separate photo arrays of six photos each, and identified each of the three defendants.

The defense argues that the weight of the evidence against Jaron is not strong, because it is dependent on the testimony of only the victim, which is susceptible to credibility challenges in light of discrepancies between the police report and the affidavit submitted in support of the complaint.  Further, the defense contended that the evidence suggests the greater culpability of Jaron's co-defendants.  Jaron also highlighted that he does not have a significant history of criminal convictions, or of violence or substance abuse.  The defense suggests that stability in Jaron's life is shown by his gainful employment, his lifelong residence in Gary, his contributions to the support of two younger sisters, and his significant relationship with a woman who is expecting to deliver their child this month.

As I noted at the hearing, no statutory presumption in favor of detention applies because, despite the violent nature of the facts alleged here, there are non-violent means of committing the crime of kidnaping.  Whether or not Jaron should be detained is governed by the considerations set out in 18 U.S.C. §3142(g).  I addressed each of those factors in turn, to determine whether there are conditions of release that would reasonably assure the safety of any other person and the community if Jaron is released.  The government's burden of proof is under the clear and convincing evidence standard.

The first factor under §3142(g)(1) is the nature and circumstances of the offense.  For this purpose, I am not limited to the categorical narrow definition of "crime of violence" applicable in other contexts, but consider the actual facts alleged in this case.

The seriousness and violence of the kidnaping as proffered by the government is beyond quarrel. The violent abduction of the sibling of a witness in a state prosecution for the purpose of finding the witness, presumably to deter her participation in the state proceeding, is an attempt to thwart the machinery of the criminal justice system, and weighs heavily in favor of pretrial detention.

The second factor under §3142(g)(2) is the weight of the evidence, which I also find militates in favor of detention. As the defense points out, most of the evidence derives from the word of the victim. But based on the proffer, and without any basis to disbelieve what the victim told the police, that evidence is strong. The victim, who knows the defendant, was able immediately after the events to identify all three defendants and provide a detailed account of what took place and Jaron's role in it. The victim also later confirmed her identification of the defendants in photo arrays. The doorbell video corroborates the victim's story, as does the location information from the GPS on Jarod Johnson's ankle monitor. Despite some possible inconsistencies in the various documents, the FBI complaint is very specific as to the role of Jaron – striking the victim in the back of the head with a handgun, forcing her into the vehicle, pointing two guns at her, duct-taping her hands behind her while Carrington put a sock over her head, and engaging with Carrington in questioning the victim about her sister's whereabouts. The strength of the evidence is a factor in favor of detention.

Under §3142(g)(3), the next factor is the history and characteristics of the defendant. Jaron has admitted to being a daily user of marijuana and an occasional user of cocaine in the past. I do not give any consideration to charges that have been

4

dismissed, but consider that Jaron has one conviction of a felony offense, an aggravated Unlawful Use of a Weapon offense in Illinois for which he was sentenced in 2017, two years prior to this offense. Some facts highlighted by the defense – Jaron's job, his family support, and his child about to be born – seem to me to bear on the risk of non-appearance more than on the assessment of his danger to the community. On balance, I find this third factor to be neutral, at best.

Finally, §3142(g)(4) requires consideration of "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." This consideration strongly militates in favor of detention. Probable cause to believe that Jaron engaged in a violent attempt to interfere with the criminal justice system by witness tampering suggests that Jaron's release pending his trial presents a serious danger to the community.

For all these reasons, in light of the evidence and argument before me at the October 1, 2019 hearing, and as I announced on the record there, Jaron Johnson's challenge to the magistrate judge's detention order must be rejected. Reviewing the matter de novo, I conclude that there exist no conditions or combination of conditions that could reasonably assure the safety of the community if Jaron Johnson were released pending trial.

After the hearing, Jaron, acting *pro se*, filed a letter to the court requesting a second hearing on his motion, at which he and his family could speak on his behalf. [DE 50.] The letter is improper for a number of reasons. First, Jaron is represented by counsel and therefore has no right to address the court directly in this manner. On this basis, the

government has filed a motion to strike both this letter and a second one Jaron filed. [DE 53.] During a conference held October 17, 2019, Magistrate Judge Kolar granted the government's motion to strike as to the other letter. [DE 55, 51.] Secondly, although I do not doubt the authenticity of the letter in this instance, it does not bear his signature, which is an important procedural requirement to support the authenticity of any filing made by an individual acting *pro se*. Finally, Jaron received a full and fair hearing on his motion to revoke the detention order, with the benefit of representation by very able counsel, and, even if considered on its merits, the letter presents no compelling reason for a supplemental hearing.

ACCORDINGLY,

Defendant Jaron Johnson's Motion for Revocation of and/or Amendment of Detention Order [DE 44] is DENIED.

The government's motion to strike [DE 53] is GRANTED as to Jaron Johnson's pro se letter docketed as DE 50.

SO ORDERED.

ENTERED: October 22, 2019.

    /s/ Philip P. Simon
    UNITED STATES DISTRICT JUDGE