**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff/Respondent, ) | |
| ) | |
| vs. ) | NO. 2:19-cr-59 |
| ) | 2:23-cv-185 |
| ) | |
| JARON JOHNSON, ) | |
| ) | |
| Defendant/Petitioner. ) | |

## **OPINION AND ORDER**

Jaron Johnson, Jarod Johnson, and their mother (Patricia Carrington) participated

in an incredibly violent and bone chilling kidnapping of a woman whose sister-in-law

was set to testify the following day against Jarod.  While the mother and Jaron pleaded

guilty to the kidnapping charge, Jarod proceeded to a jury trial and was found not

guilty of kidnapping.  This course of events might be the impetus behind Jaron's current

motion to vacate under section 2255 wherein Jaron largely argues his attorney was

ineffective for allowing him to accept a plea offer instead of investigating his case and

heading to trial like his brother.  As detailed below, Jaron Johnson's claims are meritless

so his petition will be denied.

### **Background**

The harrowing events of April 14, 2019 were fully recounted at trial by the victim

who testified she was walking home from work that night when a car pulled in front of

her. [PSR, DE 247 at 4.]  What happened next was a terrifying level of violence.  Jaron Johnson jumped out of the car, hit the victim in the back of the head with a handgun, and forced her into the vehicle.  *Id.*  Jaron's mother, Patricia Carrington, was waiting in the car and took the victim's cell phone.  Jaron then held two handguns at the victim to prevent her from escaping and then duct taped her hands together.  Meantime, his mother placed socks over the victim's eyes and duct taped them to her head.  *Id.*  Jaron and his mother then proceeded to ask the victim questions about where her sister was—meaning the sister who was scheduled to testify against Jarod Johnson (Jaron's brother).  That trial involved allegations that Jarod shot the sister while she was pregnant.  *Id.* Jaron and his mother continued to question the victim, beating her each time she didn't answer.  *Id.*

After driving around for an hour and continuing the interrogation and beating of the victim, things suddenly went from bad to worse. *Id.*  Jarod Johnson was picked up along the way and got in the car. He also beat and choked the victim until finally, mercifully, the car stopped.  *Id.*  As the victim was being pulled out of the car and forced to walk forward, roughly six gunshots were fired and she was shot in the face and arm. *Id.*  Incredibly, the victim lived and ran to a stranger's home that was equipped with a Ring Doorbell camera.  The video depicting the victim at the door pleading for help with her face badly wounded was played at Jarod's trial and was very difficult to watch.

Jaron Johnson was charged in a one-count indictment with kidnapping, in

violation of 18 U.S.C. § 1201(a)(1) and (2).  [DE 7.] A plea agreement was filed with the Court on March 2, 2019, wherein Johnson pleaded guilty to kidnapping. [DE 133.] In the plea agreement, he agreed he used a dangerous weapon in connection with his offense, which increased the offense level by 2 levels and further agreed that the victim sustained a degree of injury that is between permanent or life threatening and serious bodily injury, which increased the offense level by 3 levels. [*Id.* at 5.]

Johnson pleaded guilty before then Magistrate Judge Joshua Kolar on March 17, 2021. [DE 145.]   At the time, he was represented by attorney Arlington Foley.  During the change of plea hearing, Johnson answered a series of questions, indicating he had discussed the charge and the case with his attorney, he was satisfied with the representation of his attorney (Mr. Foley), and he was requesting and consenting to plead guilty.  [DE 194 at 10-11.]  Additionally, Johnson stated that he had reviewed the plea agreement and discussed it with his attorney, he understood it, no one had threatened him or in any way persuaded him to enter the plea, and he understood each individual portion of the plea agreement. [*Id.* at 11-14.]  When specifically asked if he was entering into the plea agreement "freely and voluntarily without anyone making any threats or promises to you of any kind?" Johnson answered, "[y]es, sir." [*Id.* at 3.] This question was asked again, later in the hearing, when Judge Kolar asked Johnson "has anyone made any promises or assurances to you that are not contained in the plea agreement to persuade you to accept the plea agreement?" and Johnson answered, "[n]o, sir." [*Id.* at 12.]

3

Additionally, Judge Kolar made sure that Johnson understood the consequences of the plea and that the maximum penalty for kidnapping was life imprisonment.  [*Id.* at 16-20.]  Johnson also stated that he and he attorney discussed how the sentencing guidelines might effect his case. [*Id.* at 18.]  Judge Kolar went out of his way to advise him "[d]o you understand that the Court will not be able to determine the advisory guideline sentencing range for your case until after a presentence investigation report has been completed and you and the government have had an opportunity to challenge that report and any of the facts in the report or how the facts apply to the guidelines that are recommended by the probation officer? Is that clear?" [*Id.* at 18-19.]  And Johnson responded in the affirmative.  Johnson also stated he understood that even after the advisory guideline sentencing range has been determined, the Court needs to look at other statutory sentencing factors under 18 U.S.C. § 3553(a), and since the guidelines are merely advisory, those sentencing factors can result in the imposition of a sentence that is either higher or lower than the applicable guideline range. [*Id.* at 19.]

On top of that, Judge Kolar specifically asked Johnson if he understood that he had a right to a jury trial, and that he would be foregoing that with the plea, and Johnson answered affirmatively. [*Id.* at 20-22.]  Ultimately, Judge Kolar found Johnson entered into an informed plea of guilty. [*Id.* at 30-31.] Judge Kolar therefore recommended that I accept the plea of guilty which I did a couple of weeks later. [DE 145, 169.]

After the change of plea, but before sentencing, Johnson had a breakdown in

communication with his attorney, and Mr. Foley moved to withdraw. [DE 188.]  The

motion was granted, and attorney James Vanzant was appointed to represent Johnson

for the remainder of the case, including the sentencing. [DE 190, 191.]

On September 29, 2021, Johnson's counsel filed a notice of no objections to the

Presentence Investigation Report. [DE 201.]  However, on March 22, 2022, Johnson's

sentencing counsel (Mr. Vanzant) raised multiple objections in Johnson's sentencing

memorandum, including cross-referencing his offense conduct to the guidelines for

attempted murder, objections to the degree of injury enhancement, and objections to the

dangerous weapon enhancement. [DE 243.]

After Johnson raised these new objections, I reset Johnson's sentencing date so

that I could properly assess the objections and make appropriate findings. [DE 245.]

Johnson's sentencing was reset from April 2022 to June 2, 2022. [DE 252.] In addition, a

revised PSR and Addendum were created to reflect Johnson's new objections. [DE 247,

248.]

The revised PSR reflects that under the kidnapping Guideline (USSG § 2A4.1),

Johnson's base offense level was 32. [DE 247 at 6.]  It assessed a 3-level increase for the

degree of bodily injury sustained by the victim and a 2-level increase for use of a

dangerous weapon, both of which Johnson agreed to in his plea agreement.  *Id.*  This

resulted in a total offense level of 37 prior to a 3-level reduction for acceptance of

responsibility. [*Id.* at 7.] The revised PSR then reflected that Johnson's offense should be

cross-referenced from the kidnapping Guidelines to the attempted murder Guidelines

5

under USSG § 2A2.1, with a base offense level of 33, plus a 3-level increase for the degree of bodily injury sustained by the victim, plus a 4-level increase because the victim was kidnapped during the commission of another offense, resulting in a total offense level of 40 prior to a 3-level reduction for acceptance of responsibility. [*Id.* at 6-7.]  So the total offense level was 37.

At the sentencing hearing on June 2, 2022, I addressed each of Johnson's objections to the PSR.  Regarding the objection to the degree of injury suffered by the victim, I was in complete agreement with what Johnson agreed to in his plea, finding "the level of injury that this woman suffered, how could it not be serious bodily injury?" [DE 283, Sent. Tr., at 7.]  While Johnson argued at sentencing that he was not present at the actual shooting of the victim, this was contrary to what he agreed to in his plea agreement.  ("We ultimately dragged the victim from the car to an area behind a house and shot her in the face and arm"). [DE 133 at 6].  And during his plea colloquy, Johnson answered "yes" to the question that he was a knowing participant in the blindfolding, duct taping, and forcing of the woman into the car against her will.  Likewise, he said  "yes" to the question "and, ultimately, she was dragged out of the car and shot by someone, once again, a participant in that vehicle and was pretty much left for dead; is that correct?" [DE 194 at 28.]

The ambiguity about whether Jaron Johnson was present for the actual shooting (as opposed to just his brother Jarod and mother carrying out the shooting) only came into play after the victim's testimony during Jarod's trial.  The victim saw Jaron before

she was blindfolded and duct taped, but she never actually saw Jarod Johnson since he entered the car after she was blindfolded, and she testified at Jarod Johnson's trial that she was beaten, disoriented, and dizzy. [Case No. 2:19-cr-59, Jarod Johnson Trial Tr., DE 172 at 61-62.] While the victim testified she recognized Jarod's voice in the car, defense counsel did a good job instilling doubt about her capacity and ability to recognize the difference between Jaron's voice and Jarod's voice, and appreciate who was part of the actual shooting due to her incapacitated state. [*Id.* at 72-75.]

In all events, I overruled Jaron Johnson's objection during sentencing finding:

> I am persuaded far beyond a preponderance of the evidence, frankly, that Mr. Johnson, Jaron Johnson, was, in fact, present when this victim was taken from the car and shot in the face, all part of one continuous course of conduct that commenced, of course, with this defendant, Jaron Johnson, abducting her at gunpoint and striking her with the firearm. This is just abundantly clear from this record.

[DE 283 at 14-15.] I supported this reasoning with Johnson's statements during his plea, when he acknowledged that he was present when the victim was abducted as well as when she was dragged from the car and shot. [*Id.* at 16.] I went on to reason:

> I sat through the trial of this case. And I am left with a firm conviction that the defendant was, in fact, present, that the victim was just doing the best she could to try to identify voices. But there was no reason to believe along the way that this defendant, Jaron Johnson, was dropped off at some point after he abducted the victim, held her at gunpoint, struck her in the head with the gun, participated in duct taping her and blindfolding her. There's just nothing to suggest that he was dropped off somewhere along the way and, of course, he admitted to it as I just delineated here on the record.

[*Id.* at 16.] Johnson's counsel then noted that "[g]iven the fact that the Court has found

7

that the actual shooting was relevant conduct, all three objections are covered under that." [*Id.* at 18.]

In the end, Johnson had a total offense level of 37 and criminal history category of II, which resulted in an advisory range of 235-293 months' imprisonment. [*Id.* at 17.] I sentenced Johnson to a below-guidelines term of 210 months. [*Id.* at 32.] Judgment was entered on June 6, 2022. [DE 254.] Johnson did not file an appeal.

On June 5, 2023, Johnson timely filed the instant motion to vacate under section 2255. [DE 261.] He was then granted five continuances to file his memorandum in support of his motion. Johnson filed his memorandum on December 14, 2023. [DE 274.] Johnson argues his lawyer was ineffective (1) for misadvising him in the plea process thus preventing him from intelligently accepting the plea offer; (2) for not disclosing to Johnson the sentencing enhancements and sentencing issues; and (3) for failing to file a direct appeal. [DE 274.] The government filed a response in opposition [DE 284] and Johnson filed a reply brief [DE 287].

On April 7, 2025, Johnson filed a motion to supplement his section 2255, requesting the court take judicial notice of his argument that: the charge of kidnapping is unconstitutional unless it is a person who is a foreign official or an international protected person, or an "official quest." [DE 299.]

After I did an initial review of the briefs in this case, I set an evidentiary hearing. [DE 300.] In that order, I told the parties they "should be prepared to present testimony and evidence on Johnson's claim that he asked his sentencing counsel, James Vanzant,

8

to file a direct appeal on his behalf." [*Id.* at 1.]

Attorney Richard Kling was then appointed to represent Johnson for the purpose of the hearing. Following a motion to continue filed by Johnson that I granted, the evidentiary hearing finally occurred on January 13, 2026. [DE 302, 303.] Defendant Johnson and Attorney Vanzant both testified. During this hearing, for the first time Johnson's counsel set forth a detailed argument that Mr. Foley provided ineffective assistance of counsel when he told Johnson he would be sentenced to between 168-210 months.[1] Additionally, as will be discussed later in this opinion, Johnson and Vanzant testified about whether Johnson actually asked him to file a direct appeal.

Finally, I gave the parties the opportunity to file supplemental briefs after the hearing, and they both did. [DE 307, 310.]

## Discussion

Habeas corpus relief under 28 U.S.C. section 2255 is reserved for "extraordinary situations." *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996). In order to proceed on a habeas corpus petition pursuant to section 2255, a federal prisoner must show that the district court sentenced him in violation of the Constitution or laws of the United States, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. *Id.*

Johnson was appointed counsel for the purpose of the hearing, but he filed his

---

[1] A transcript of the hearing was not requested by the parties or created. Therefore, I am relying on my memory and notes when recounting the testimony given at the evidentiary hearing.

9

initial motion, memorandum in support, and motion for an addendum pro se.  In assessing Johnson's motions, I am mindful of the well-settled principle that, when interpreting a pro se petitioner's complaint or section 2255 motion, district courts have a "special responsibility" to construe such pleadings liberally.  *Donald v. Cook Cnty. Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996).  On the other hand, "a district court should not 'assume the role of advocate for the pro se litigant' and may 'not rewrite a petition to include claims that were never presented.'"  *Riley v. United States*, No. 2:05-cv-380, 2006 WL 2849721, at *2 (N.D. Ind. Sept. 28, 2006) (quoting *Barnett v. Hargett*, 174 F.3d 1128, 133 (10th Cir. 1999)).

Johnson claims that his trial counsel provided ineffective assistance of counsel for a number of reasons.  Any ineffective assistance of counsel claim is governed by *Strickland v. Washington*, 466 U.S. 668 (1984).  To prevail, Johnson must first show that specific acts of his attorney "fell below an objective standard of reasonableness" and were "outside the wide range of professionally competent assistance. " Second, Johnson must show prejudice, which entails showing by "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 688, 690, 694; *see also Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993).  If a petitioner cannot establish one of the *Strickland* prongs, the Court need not consider the other.  *Groves v. United States*, 755 F.3d 588, 591 (7th Cir. 2014).

The court's scrutiny of counsel's performance is highly deferential and a defendant "must overcome the strong presumption that counsel's conduct falls within

10

the wide range of reasonable professional assistance." *Perrone v. United States*, 889 F.3d 898, 908 (7th Cir. 2018) (citations omitted). Moreover, in reviewing counsel's performance, the court should "not second guess the reasonable tactical decisions of counsel." *Johnson v. Thurmer*, 624 F.3d 786, 792 (7th Cir. 2010). Regarding prejudice, there is a presumption that the defendant has not suffered prejudice. *Perrone*, 889 F.3d at 908.

## I.     Knowing and Voluntary Plea

Johnson claims his counsel was ineffective for failing to properly advise him; therefore, he could not intelligently accept or reject the plea. [DE 261 at 5.] But to prevail on the prejudice prong, a defendant must show that, "but for counsel's errors, there is a reasonable probability that the result would have been different." *United States v. Graf*, 827 F.3d 581, 584 (7th Cir. 2016). In the context of a guilty plea, a defendant must show that, but for counsel's errors, he would not have pleaded guilty and would have instead insisted on going to trial. *Id.* To make this showing, Johnson "must do more than simply allege 'that he would have insisted on going to trial.'" *Hutchings v. United States*, 618 F.3d 693, 697 (7th Cir. 2010) (citation omitted). He has to "come forward with objective evidence that he would not have pled guilty," such as evidence regarding "the nature of the misinformation provided by the attorney to [him] and the history of plea negotiations." *Id.* In his initial filings, Johnson does no such thing — he only basely claims that counsel's "misadvi[c]e and misinformation dissuaded petitioner to intelligently accept or reject the plea offer during the negotiation process." [DE 274 at 1.]

11

Later in this case, Johnson's counsel raised the issue of whether Mr. Foley's representation was ineffective for failing to properly advise Johnson of his potential sentencing guideline range during the plea negotiation phase of the case. Johnson testified at the hearing that Mr. Foley told him he thought the judge would sentence him to between 168 months and 210 months. Johnson went on to explain that Foley advised him if he signed a plea with a two-point enhancement for a bodily injury, he could get 367 months imprisonment, if they gave him a three-point enhancement for serious bodily injury his offense level would be a 33, and if the guideline range included a life threatening and permanent injury his offense level would be 38. Johnson's testimony shows that Foley did indeed communicate with him the many possibilities of guideline ranges that he could ultimately face. Johnson complains that Foley never discussed with him the cross-reference of attempted murder.

I think what Johnson is really getting at is this: he is claiming that if he knew the guideline range as calculated in the PSR would have been 235-293 months, he would have rejected the plea and gone to trial. But here is the rub: Johnson claims Foley advised him that ultimately he would receive between 168-210 months imprisonment. So when he pleaded guilty, Johnson must have known and accepted the possibility of receiving 210 months. And, indeed, I sentenced him below the applicable guideline range to 210 months imprisonment. So number one, I can't categorize Foley's assistance as falling below the wide range of reasonable professional assistance because his prediction ultimately came true. *See United States v. Williams*, 698 F.3d 374, 386 (7th Cir.

2012) (a defendant must show his counsel rendered objectively unreasonable performance and "performed seriously below professional standards."). More importantly, where is the prejudice? He was sentenced to a period of incarceration—210 months—that Mr. Foley advised was probable. And in all events, Johnson has not shown that but for his counsel's alleged error with respect to the calculation of his guideline range, he would have pleaded guilty and gone to trial.

In addition, the lengthy plea colloquy that Judge Kolar engaged in with Johnson is proof that Johnson had discussed the case with his attorney (at that time Mr. Foley), that he was satisfied with his attorney's representation, he understood the terms of the plea agreement and the consequences to pleading guilty, and knowingly entered into it. [DE 194 at 9-22.] Johnson specifically testified under oath that no one made him any promises, and he acknowledged that he knew the guidelines were merely advisory and that the sentencing judge is not bound by them. [*Id.* at 3, 12.] Courts give special weight to a defendant's sworn testimony in a plea colloquy. *See Graf*, 827 F.3d at 584 ("A defendant's motion to withdraw is unlikely to have merit if it seeks to dispute his sworn assurances to the court.") That testimony is presumed to be true, and a defendant bears a heavy burden to overcome the presumption. *United States v. Smith*, 989 F.3d 575, 582 (7th Cir. 2021). Here Johnson has not overcome that presumption.

For all of these reasons, Johnson's claim that he didn't knowingly enter his plea agreement fails.

**II.    Counsel's Alleged Failure to Discuss Sentencing Enhancements**

Next, Johnson contends his sentencing counsel (Mr. Vanzant) was ineffective during the sentencing process because of "non-disclosure of sentencing enhancements and issues" and Johnson "had no opportunity to discuss or fully address sentencing issues or enhancements with sentencing counsel." [DE 274 at 2.] Johnson also criticizes his counsel for "argu[ing] critical issues at an inappropriate stage." *Id.*

The record in this case flatly contradicts Johnson's arguments.  His sentencing counsel filed a lengthy sentencing memorandum raising numerous objections, as I discussed earlier in this opinion. [DE 243.] Counsel objected to the degree of injury to the victim, use of a weapon, and the cross reference from the kidnapping guidelines to the murder guidelines, which were the only enhancements listed in the PSR that raised Johnson's sentencing guidelines beyond the base offense level for kidnapping.

Taking note of the new objections, I continued the sentencing hearing for Johnson from April 8, 2022 until June 2, 2022, so the probation office could address the objections in a revised addendum to the final PSR, and so I could fully consider them. [DE 245, 248.] And all of this occurred despite the fact that Johnson expressly agreed to the sentencing enhancements for the degree of injury and use of a weapon in his plea agreement. [DE 133; DE 194 at 13.]  From my perspective, Johnson's counsel did everything he could have done to argue the critical issues at the appropriate time in the case.

14

Regarding Johnson's argument that his counsel should have discussed the sentencing issues more with him, Johnson has not established that his attorney's performance was deficient.  The sentencing attorney properly raised several objections and thoroughly argued them during the sentencing hearing.  In addition, during the sentencing hearing, Mr. Vanzant stated that he sat down and talked with Johnson about the presentence report, and when I asked Mr. Johnson whether that was true, he replied in the affirmative. [DE 283 at 3.]  Moreover, how would have additional consultation with his client about the sentencing enhancements have changed the outcome of Johnson's sentencing?  Johnson received a very favorable and fair sentence, and he has not established that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

### III.    Failure to File a Direct Appeal

Johnson's final claim of ineffective assistance of counsel relates to his counsel's failure to file a direct appeal on his behalf. [DE 274 at 2.]  Johnson claims he requested that an appeal be filed, but his attorney did not follow through.  *Id.* In a later filing Johnson expanded on his claim that Mr. Vanzant dropped the ball in failing to perfect the appeal.  Here's what Johnson swore to:

> [O]n my sentencing date June 2, 2022 Mr. Vanzant stated to me in court if I waive my right to appeal from my plea agreement that he will still do my direct appeal and it won't affect my direct appeal being submitted, and he also later said after sentencing during a video visit at the county jail he would send me my sentencing transcripts which I never received and again stated he was going to do my direct appeal.

[DE 296 at 3.]  Because I viewed this as equivocal, and not a clear request for Mr. Vanzant to file a direct appeal, I scheduled an in person hearing on this matter and told the parties they "should be prepared to present testimony and evidence on Johnson's claim that he asked his sentencing counsel, James Vanzant, to file a direct appeal on his behalf." [DE 300 at 1-2.]

The Supreme Court has held that failure of defense counsel to file a notice of appeal despite being instructed to do so constitutes per se ineffective assistance of counsel. *Rodriques v. United States*, 395 U.S. 327 (1969); *see also Castellanos v. United States*, 26 F.3d 717, 719 (7th Cir. 1994).  Although Courts in the Seventh Circuit used to find that a plea agreement waiver of a right to appeal erased any argument of ineffective assistance of counsel for failure to file a direct appeal, *see Solano v. United States*, 812 F.3d 573, 577 (7th Cir. 2016), *United States v. Walker*, No. EV 02-24-CRYH, 3:03-CV-163RLYWGH, 2005 WL 2230082, at *2 (S.D. Ind. Sept. 13, 2005), the Supreme Court made clear in *Garza v. Idaho*, 586 U.S. 232, 242-44 (2019), that an attorney provides constitutionally deficient performance if they fail to file a notice of appeal despite the defendant's express instructions (even where an appellate waiver has been signed), and prejudice is presumed.

Johnson testified to two points in time that he believed he requested Vanzant file a direct appeal on his behalf.  First, he stated they had a conversation directly after sentencing.  Johnson claims Vanzant brought the matter to his attention after the sentencing hearing and told him he was going to do his appeal for him.  According to

16

Johnson, Vanzant volunteered to file his appeal. And second, Johnson claims they had a video visit after sentencing when he was in jail and Vanzant told him he would send Johnson his sentencing transcripts and do his direct appeal.

Mr. Vanzant testified during the hearing too. He is an accomplished criminal defense lawyer who has been practicing for almost 20 years and has represented more than 200 defendants in federal court. He is very aware of his duties and responsibilities as trial counsel as it relates to the appellate process. Vanzant testified that he did not remember Johnson asking him to file an appeal directly after the sentencing. He also testified it was his practice to order the sentencing transcripts right away if he was planning on filing a direct appeal, and when he reviewed his records in this case, there is no record of him requesting that transcript. Based upon his review of the file and his own independent recollection, Vanzant does not believe Johnson ever explicitly asked him to file an appeal in his case. Vanzant stated this in his sworn affidavit as well, that he does "not recall any conversation with Johnson on the date of sentencing as described in his affidavit." [Vanzant Dec., Def. Ex. 1 at 2, DE 307-1.]

As to the second point in time, Vanzant also does not recall having a video visit with Johnson after the sentencing. Vanzant stated during the hearing that as a matter of practice, he kept activity records on each client and always recorded entries. *See also* Vanzant Dec., DE 307-1 at 5 ("it is my standard practice to maintain contemporaneous activity records, especially for client contact. It is therefore unlikely that I would have had a video visit with Johnson and not memorialized it in my activity records.").

17

During the hearing, Vanzant also emphasized that one of the most important things they do as counsel is to write down client contact, so they can have a good record.  In this case, Vanzant looked back at his activity records, and there is simply no record of such a meeting a week after the sentencing.

I believe Vanzant testified credibly in this matter.  Because it was his custom to order sentencing transcripts immediately if he was going to file an appeal, and his records indicate he did not order the transcripts in this case, the surrounding circumstances support his memory that Johnson did not ask him to file an appeal in court directly after the sentencing hearing.  In addition, Vanzant's records do not reflect a video call with Johnson the week after the sentencing hearing even though he is fastidious about recording such contacts.  The absence of any such note in his files is telling.  All of which leads me to conclude that Johnson did not request that Vanzant file an appeal on his behalf.

One last note in this section.  Johnson now intimates that Vanzant was also ineffective for failing to file a motion to withdraw his guilty plea early on when Vanzant became his attorney. [DE 307 at 3.]  Vanzant also testified at the hearing that he did consider whether Johnson's request to withdraw his plea was something he could properly file.  He assessed the record and decided it would not be appropriate to file because he thought the record demonstrated it was indeed knowing, intelligent, and voluntary. [*See* Vanzant Dec., DE 307-1 at 4-5.]  I do not think Vanzant's failure to file a motion to withdraw Johnson's plea constitutes ineffective assistance of counsel.  He

considered Johnson's request and had valid legal reasons for not filing such a motion. *See United States v. Underwood*, 174 F.3d 850, 852–54 (7th Cir. 1999) (noting that "[n]o defendant has an absolute right to withdraw a guilty plea" and that the utility of plea agreements would be undermined by allowing a defendant to renege based on his "reevaluation of his trial prospects").

## IV. Motion for Addendum

On April 7, 2025, Johnson filed a motion to supplement his section 2255, requesting the court take judicial notice of his argument that: the charge of kidnapping is unconstitutional unless it is a person who is a foreign official or an international protected person, or an "official quest." [DE 299.] If I consider this a new claim, it would be untimely under Federal Rule of Civil Procedure 15(c)(1)(B) unless it relates back to the claims Johnson made in his original section 2255 filing. But let's cut to the chase - even if I found this additional argument relates back to the claims in his original petition (and this is doubtful since this claim seems to be grounded in a different set of facts) and is thus timely filed, it completely fails substantively. There is no legal basis whatsoever to argue the kidnapping statute only applies to kidnapping foreign officials or internationally protected people. Therefore, the motion to file the addendum is denied.

\* \* \*

Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings, a district court must "issue or deny a certificate of appealability when it enters a final order

19

adverse to the applicant."  A certificate of appealability may issue only if the applicant "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make such a showing, a defendant must show that "reasonable jurists could debate whether (or, for that matter, agree that) the motion should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 475 (U.S. 2000) (internal quotation marks and citation omitted).

For the reasons set forth above, Johnson has not stated any grounds for relief under section 2255.  The Court finds no basis for a determination that reasonable jurists would find this decision debatable or incorrect or that the issues deserve encouragement to proceed further.  Therefore, a certificate of appealability will not be issued.

## Conclusion

For the foregoing reasons, Johnson's § 2255 [DE 261] is **DENIED and DISMISSED** with prejudice.  The motion for an addendum [DE 299] is DENIED as the argument contained within is baseless.  The Clerk shall enter final judgment accordingly.

SO ORDERED.

ENTERED: March 11, 2026.

 s/   Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT